CONCORD AUTO AUCTION, INC.

v.

RUMFORD PROPERTY & LIABILITY INSURANCE COMPANY.

No. 86–92–Appeal.

Supreme Court of Rhode Island.

Jan. 28, 1988.

Gary R. Pannone, John P. McGann, Daniel A. Calenda, Providence, for plaintiff.

Michael Mulcahey and Linda Elizabeth Buffardi, Providence, for defendant.

## OPINION

KELLEHER, Justice.

This is an appeal by the defendant, Rumford Property and Liability Insurance Company (Rumford), from a summary judgment granted by a Superior Court justice to the plaintiff, Concord Auto Auction (Concord). We affirm.

The facts giving rise to this litigation are undisputed. On August 20, 1982, Mendon Road Motors (Mendon), a Rhode Island automobile dealer, delivered a 1980 Cadillac Coupe to be sold at a Massachusetts auction conducted by Concord. Subsequently a New Hampshire dealer purchased the car for $8,500 and later sold it to a customer.

Later the New Hampshire police discovered that the Cadillac was stolen and impounded the vehicle. In late October 1982, Concord reimbursed the New Hampshire dealer for the purchase price it paid at the auction in consideration for an assignment by the New Hampshire dealer of its claim against Mendon.

Once a default judgment was entered in the District Court against Mendon, Concord discovered that the Rhode Island dealer was out of business and its license had been revoked. Concord eventually contacted Rumford, who was a surety on the bond issued on Mendon's behalf. Rumford denied any liability on the bond and has refused to make payment.

Rumford concedes that a violation of G.L. 1956 (1982 Reenactment) § 31–5–11[1] on the part of Mendon would suffice to trigger its obligation as surety to pay on the bond. However, Rumford contends that the trial justice misconstrued the statute when he granted summary judgment absent any evidence that Mendon acted with criminal intent when it sold the stolen vehicle. We disagree. Section 31–5–11 sets forth eleven enumerated grounds that

authorize the Rhode Island Motor Vehicle Dealers' License Commission to suspend or revoke an automobile dealer's license to do business.

Here Concord argues that Mendon may have violated the provisions of G.L. 1956 (1985 Reenactment) § 6A–2–312, wherein a seller guarantees that good title to the property in question is being conveyed and that the transfer is lawful. Rumford, however, contends that a violation of the Uniform Commercial Code does not fall within the ambit of § 31–5–11. We disagree.

Admittedly subsections (c) through (i) of § 31–5–11 require a showing of fraud or misconduct before the commission may suspend, revoke, or deny a dealer's license, and subsection (j) requires proof of unconscionable practice relating to the dealer's license. However, it is also clear that subsections (a) and (b) do not require proof of scienter because the commission, under (a), can revoke, deny, or suspend a license because of the "unfitness of applicant to do business as a motor vehicle dealer." Again, subsection (b) authorizes the imposition of sanctions for "any material misstatement" by a dealer. Subsection (k) is the general catchall and authorizes sanctions whenever a dealer has "violated any law relating to the sale, distribution or financing of motor vehicles."

Having in mind its punitive provisions, Rumford requested that we construe § 31–5–11 strictly. However, our task is not so much with statutory construction as it is with the fact that the bond in question is required because of the issuance of rules and regulations of the Rhode Island Motor Vehicle Dealers' License Commission effective January 1, 1981 as filed at the Secretary of State's office. Section II(1) of the rules mandated a filing by each licensed dealer of a surety bond of $15,000, which is payable to the commission.[2] The bond is to

---

1. General Laws 1956 (1982 Reenactment) § 31–5–11 provides:

    "The commission may deny an application for a license, or suspend or revoke a license after it has been granted, for the following reasons:

    \*　　\*　　\*　　\*　　\*　　\*

    (k) For having violated any law relating to the sale, distribution or financing of motor vehicles."

2. At its January 1985 session the General Assembly amended chapter 23.2 of title 31 by adding § 31–23.2–12 which requires all licensed motor vehicle dealers to post a bond of not less than

be filed yearly, and the rule specifically states that this action is being taken so that "the purchasers of motor vehicles shall be adequately protected." Here our concern, as was the commission's, is not with the dealer but with the purchaser. Concord, as purchaser, is entitled to be compensated since Mendon failed to convey good and lawful title to Concord. It matters little whether the purchase takes place on the dealer's premises or, as in the present controversy, at an auction sale.

Rumford's appeal is denied and dismissed. The judgment appealed from is affirmed.

fifteen thousand dollars ($15,000) with the dealer's license commission for the purpose of indemnifying "a good faith purchaser who suffers any loss occasioned by a violation of the general laws or the rules and regulations of the commis-

sion." Subsequently the commission amended its rules which were in effect in mid-November 1982, and the amended version includes the requirements which were set forth in the 1985 amendment.